UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK J. PERSON, | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiff, | Civil Case No. 12-2293 (FSH) |
| v. | **OPINION** |
| TEAMSTERS LOCAL UNION 863, et al., | Date: October 16, 2013 |
| Defendants. | |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Defendant Teamsters Local Union 863's Motion for Summary Judgment (Docket No. 49) pursuant to FED. R. CIV. P. 56. The Court has reviewed the submissions of the parties and considers the motions without oral argument pursuant to FED. R. CIV. P. 78.

**I. BACKGROUND**

**a. Procedural History**

On April 17, 2012, Plaintiff Frank Person filed a Complaint against Defendants, Teamsters Local Union 863, Local 863 Pension Fund, Teamsters Local 863 Health and Welfare Fund (collectively "Teamster Defendants"), and Defendant Woodbridge Logistics, LLC ("Woodbridge"). The Complaint set forth seven causes of action: (1) violation of fiduciary duty under 29 U.S.C. § 1001B of the Employee Retirement Income Security Act ("ERISA"); (2) fraud

1

and misrepresentation; (3) mistake; (4) undue influence; (5) breach of contract; (6) race, color, and age discrimination under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-12, et seq.; and (7) retaliation under the NJLAD. On May 31, 2012, the Teamster Defendants filed their Answer to the Complaint and, on March 22, 2013, filed a Motion for Summary Judgment. Defendant Woodbridge Logistics separately moved to dismiss.

**b. Factual History**

Plaintiff was employed as a pallet sorter for Woodbridge from 1996 until February 5, 2011, when the facility closed and all employees were laid off.[1] Until the shutdown, Person had worked under contract with Defendant Teamsters Local Union 863, where he had been a Shop Steward and a member for over forty years. He continues to collect his $3,196 monthly pension from the Union Pension Fund. At the Woodbridge Logistics facility, union employees had been working under a Collective Bargaining Agreement ("CBA"). When that agreement expired on February 5, 2011, Woodbridge closed its New Jersey location. Plaintiff then sued Woodbridge and the Teamster Defendants to receive, among other things, additional pension benefits.

1. Delayed Retirement

Since Plaintiff became a Union employee in 1972, his Union has been a member of two Taft-Hartley defined employee benefit plans: I.B.T. Local 863 Pension Plan and the Local 863 Welfare Fund, both non-contributory plans where only the employer makes contributions. In May 2004, Plaintiff requested that the Union calculate his monthly annuity as if he were to immediately retire. At that time, Person was 65-years old with 34 years of service. He was eligible to retire and draw a pension at a "Normal Retirement Age" without a penalty for early

---
[1] The facts are taken from the parties' Rule 56.1 Statements of Uncontested Facts. All facts cited in this section are uncontested unless explicitly noted.

retirement. He did not retire and draw his pension, but continued working at salary.

In April 2010, Plaintiff was 70 ½ years old and still employed. When he reached that age, the Pension Fund sent Plaintiff a letter regarding his pension. It stated that, under the Plan, an employee over age 70 ½ must either begin drawing his pension while working, or elect to defer benefits, in writing, until actual retirement. On April 12, 2010, Plaintiff elected to begin collecting his pension while continuing to work. One year later, the Woodbridge facility closed.

The sole dispute briefed by the parties is whether Plaintiff is entitled to a higher pension annuity, or actuarial increase, because he delayed retirement and did not draw his pension when he first became eligible. Plaintiff claims: that between 2004, when he inquired as to his eligibility to retire, and 2010, when he began receiving his pension, he was eligible to draw a pension; that he did not elect to draw his pension during this time; and that this period from 2004 to 2010 was a deferment of benefits which should have resulted in an actuarial increase in his ultimate monthly annuity. Defendants, on the other hand, allege that Plaintiff had only two options in 2004: take his pension and retire, or continue working at salary. They contend that deferment, along with an actuarial increase in benefits, was not available under the Plan until 2010, when Plaintiff turned age 70 ½.

2. Election of Pension Plan

Members of the Plan must choose one of several options before receiving their pension. For married Union members, the default plan is the 100% Joint and Survivor Annuity. This option provides less benefits each month than a Straight Life Annuity, which ends upon the pensioner's death, but in exchange, it provides continued benefits for the pensioner's spouse after the pensioner dies. When Plaintiff's Plan was updated in 2000, summaries of the Plan

3

options were distributed in a booklet called the Summary Plan Description. In it, the annuity options are listed, including the default Joint and Survivor annuity and the Straight Life Annuity. It states that once a member elects any option and begins drawing a pension, the choice cannot be changed: one "may reject [the 100% Joint and Survivor spousal annuity] or revoke a prior rejection any number of times before your pension starts. However, you cannot change the payment form after the Plan starts to pay your benefit."

Plaintiff acknowledges that he received a letter on April 9, 2010, before he began drawing his pension, listing the possible benefits, and stating that his choice of an option was irrevocable. This letter stated: "ONCE YOU ELECTED A PENSION OPTION, THAT OPTION CHOICE CANNOT BE CHANGED AT ANYTIME THEREAFTER FOR ANY REASON" (emphasis in original). He elected spousal benefits under the 100% Joint and Survivor Annuity. After he began receiving his pension, he attempted to change his option and waive spousal benefits, as he and his wife had separated. Defendants did not alter his plan. Consequently, he is receiving around $3,196 per month under the Survivor plan, instead of $3,993 under the Straight Annuity plan.

The Plan Summary also states that there is a cap on the number of years of service that will be credited to an individual's pension. Pension benefits are increased each year of credited service until the individual has accrued 35 years of service, the maximum amount. After that point, benefits do not increase based on the length of service. It is undisputed that Plaintiff acknowledged in a signed writing that pension calculations are based on a maximum of 35 years of credited service.

Plaintiff alleged in his Complaint that he is entitled to the benefit of credited years of service above the 35 year maximum because Union representatives purportedly told him that his

pension benefits would increase every year without limit. He also alleged that he was entitled to greater benefits under the Straight Life Annuity as opposed to the Joint & Survivor Annuity. These two claims were not asserted, or even referenced, in Plaintiff's Opposition Brief. The only issue argued by Plaintiff was his alleged entitlement to an actuarial increase for deferring his pension between 2004 and 2010.

**II. STANDARD**

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.,* 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litig*., 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production. *Celotex*, 477 U.S. at 323. This burden requires the moving party to establish either that there is

no genuine issue of material fact and that the moving party must prevail as a matter of law, or demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322-23. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of a "genuine issue of material fact" justifying trial. *Miller,* 843 F.2d at 143; accord *Celotex,* 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Further, summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. DISCUSSION

### a. Unopposed Claims

In his opposition brief to Defendants' motion for summary judgment, Plaintiff argues only that he was denied an actuarial adjustment to his monthly pension annuity for the six years between 2004 and 2010 that he allegedly deferred his pension. He did not brief any of the other issue, stating that "plaintiff's claims against defendants are more simple and clear after fact discovery has been completed." Thus, Plaintiff has explicitly abandoned his claims to: (1) a higher pension plan under the Straight Life Annuity, as opposed to his current Joint & Survivor

Annuity; and (2) additional years of accredited service above the maximum of 35 years. Where a party only defends a subset of claims in opposition to a dispositive motion, the Court will construe those claims that were not defended as abandoned. *See, e.g., Angle v. United States*, Civ. No. 12-2495, 2012 WL 6708165, *3 (D.N.J. Dec. 21, 2012). Given that the evidence produced in discovery indicated that Plaintiff was informed of the terms of his pension plan repeatedly, Plaintiff's decision not to defend these claims is prudent.

Plaintiff's remaining claim is for entitlement to an actuarial adjustment based on the ERISA anti-cutback rule. Although this is the only cause of action he briefed in opposition to summary judgment, he included one sentence for each of the other six causes of action alleged in the Complaint, stating his entitlement to deferred benefits as: a breach of fiduciary duty; discriminatory calculation of his benefits; fraud; and misrepresentation.[2] A fleeting reference to each cause of action, without argument or legal analysis, is insufficient to prevent waiver. *Laborers' Int'l Union of N. Am., AFL–CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("a passing reference to an issue ... will not suffice to bring that issue before this court.") (quoting *Simmons v. City of Phila.*, 947 F.2d 1042, 1066 (3d Cir.1991)) (internal quotation marks omitted); *Kadetsky v. Egg Harbor Twp. Bd. of Educ.*, 82 F. Supp. 2d 327, 334 n.5 (D.N.J. 2000) (finding "casual reference" to a claim results in waiver); *Curtis v. Treloar*, No.

---

[2] Plaintiff's brief in opposition was entirely addressed to his right to pension benefits, allegedly deferred between 2004 and 2010, based on the anti-cutback rule, except for these lines: "[P]laintiff has established a question of material fact for breach of fiduciary duty under Count I of his complaint since the defendants did not act properly toward him in his retirement benefits. Plaintiff also has established a question of material fact as to Count II of his complaint for fraud and misrepresentation since plaintiff has provided evidence that the defendant misrepresent [sic] his benefit amount, and even engaged in fraud by refusing to provide him the correct benefit amount. Plaintiff has further established a question of material fact as to Count III of his complaint for mistake since defendants at the very least made a mistake as to plaintiffs [sic] benefit amount. Plaintiff has additionally established a question of material fact as to Count IV of his complaint for Undue Influence for the reasons stated above. Finally, plaintiff has established a question of material fact as to Counts VI and VII of his complaint for violation of the NJLAD since the defendants discriminated against him resulting in the miscalculation of plaintiff's retirement benefits." (Pl.'s Br. in Oppn. to Def.s' Mot. for Summ. J. 6-7, ECF No. 63)

96-1239 1998 WL 1110448 (D.N.J. Aug. 27, 1998) *aff'd*, 189 F.3d 463 (3d Cir. 1999) ("plaintiffs appear to have abandoned that claim, as they have failed to offer any argument or evidence on that claim in opposition to defendants' motion for summary judgment.") (citing *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")). By failing to brief, provide legal citations, or analyze any of these Counts, the Court deems Plaintiff, who is represented by counsel, to have strategically abandoned these causes of action.[3] *Bergen Cnty. v. Dole*, 620 F. Supp. 1009, 1014 n.3 (D.N.J. 1985) *aff'd*, 800 F.2d 1130 (3d Cir. 1986) *aff'd sub nom. Appeal of Bergen Cnty.*, 800 F.2d 1130 (3d Cir. 1986) ("Plaintiffs have not addressed all of these statutory grounds for relief in their point briefs and any ground for relief not briefed shall be deemed waived by this court."); *United States v. Schiff*, 538 F. Supp. 2d 818, 834 (D.N.J. 2008) *aff'd*, 602 F.3d 152 (3d Cir. 2010) ("No legal authority was submitted … Thus, the Court concluded that the Government was no longer pressing its argument …, having waived by non-submission of a brief on the issue."). Thus, the Court will consider Plaintiff's claim to an actuarial adjustment based on his allegedly deferred pension solely as an ERISA claim for benefits under the anti-cutback rule.

---

[3] Moreover, having reviewed each claim, the Court is satisfied that Defendants would have been entitled to judgment as a matter of law on each abandoned cause of action. The state law claims for the allegedly deferred pension benefits would have been preempted under ERISA, *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). As for Plaintiff's claim that the actuary discriminated against him based on his age when calculating his benefit, Defendants have provided uncontested evidence that an independent actuary, Actuaries Unlimited, Inc., performed calculations. There is no factual support whatsoever in the record before the Court that the actuary engaged in discrimination. "[T]he burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." *Ramada Worldwide Inc. v. Southport, LLC*, Civ. No. 11-3676, 2013 WL 3286115, *3 (D.N.J. June 27, 2013).

**b. ERISA Claim to Deferred Compensation Based on the Anti-Cutback Rule**

Plaintiff argues that he is entitled to a higher pension annuity because he purportedly deferred benefits from 2004 to 2010. Plaintiff has not pointed to any ERISA section requiring that he receive an actuarial increase in his benefits reflecting the time he delayed retirement and continued working.[4]

Instead, he relies on the anti-cutback rule, which protects contractually defined benefits from subsequent amendments which reduce those accrued benefits. *See* 29 U.S.C. § 1054(g) ("Decrease of accrued benefits through amendment of plan: (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan …."). Defendants contend that this theory was first raised in Plaintiff's Opposition to their motion to dismiss, and that it was never noted in the Complaint.

It is true that that Plaintiff may not amend his Complaint through his opposition briefing. *Foy v. Wakefern Food Corp.*, No. 09-1683, 2010 WL 147925, *5 (D.N.J. Jan. 7, 2010) (citing *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("the legal

---

[4] Although not asserted by Plaintiff, ERISA § 203(a), limiting forfeiture of benefits, addresses this issue. Generally, an employer must provide an actuarial increase for the time that an employee delays receipt of benefits past normal retirement age to reflect that this employee's retirement will be shorter: "In order for any of an employee's accrued benefit to be nonforfeitable as required under section 411, a defined benefit plan must make an actuarial adjustment to an accrued benefit, the payment of which is deferred past normal retirement age." 26 C.F.R. § 1.401(a)(9)–6(A–9). The general rule does not apply, however, and an actuarial increase is not required, if the employee delays payment of retirement benefits due to suspension in accordance with ERISA § 203(a)(3)(B), such as where the employee delays benefits because he continues working. Thus "ERISA allows an employer to defer pension payments until a recipient actually retires. 29 U.S.C.A. § 1056(a)(3). ERISA does not require an actuarial increase in benefits to compensate for the period after normal retirement age that payment of the benefits is deferred because the recipient continues to work." *Atkins v. Nw. Airlines, Inc.*, 967 F.2d 1197, 1201 (8th Cir. 1992); *Laurent v. PriceWaterhouseCoopers LLP*, 448 F. Supp. 2d 537, 555 (S.D.N.Y. 2006) ("Under ERISA § 203(a)(3)(B), benefits based upon employer contributions are not forfeitable solely because the plan permits the payment of benefits to be suspended if the participant works past normal retirement age… ERISA requires only that an employee not forfeit benefits he has accrued prior to normal retirement age because he decides to continue working past that age."). Plaintiff's Plan, section 4.23, so provides: "(3) If the Participant has attained Normal Retirement Age, his monthly benefit shall be suspended for any month in which he was reemployed, or continued to work and was paid for 40 or more hours in Disqualifying Employment." (Pl.'s Br. in Oppn. to Mot. for Summ. J. Ex. C 22, ECF No. 63-6).

theories set forth in [Plaintiff's] brief are helpful only to the extent that they find support in the allegations set forth in the complaint. '[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'")). But Plaintiff is not required by the Federal Rules to set out a particular legal theory at the pleading stage. *Andrews v. Monroe Cnty. Transit Auth.*, No. 12-2793, 2013 WL 1768014, at *1 (3d Cir. Apr. 25, 2013) (citing 5 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1219 (3d ed.2004); *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992) ("[T]he complaint need not identify a legal theory, and specifying an incorrect theory is not fatal.")). That neither the section of the ERISA statute nor the words "anti-cutback rule" are referenced in the Complaint does not mean that Plaintiff failed to give fair notice of the facts underlying his cause of action. The Complaint makes two factual references to Defendants' alleged denial of deferred accrued benefits. It states: "Plaintiff had sought a comprehensive Actuary determination and accounting and, importantly, an explanation of what transpired during the six year period he had kept working and deferred his pension," (Compl. ¶ 35); and "For years, Plaintiff obtained steady misrepresentations pertaining to his calculated monthly pension, upon which he was caused to rely, to his detriment; and he believed his deferred pension benefits would keep increasing steadily through his ongoing employment over time," (Compl. ¶ 70). These factual allegations were sufficient to give Defendants "fair notice of what the … claim is and the grounds upon which it rests," *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007)) (alterations in original), even if the legal theory was not explicitly stated.

The "anti-cutback" rule, ERISA § 204(g), "prohibits any amendment of a pension plan that would reduce a participant's 'accrued benefit.'" *Cent. Laborers' Pension Fund v. Heinz*, 541

U.S. 739, 741 (2004) (citing 29 U.S.C. § 1054(g)). An individual's "accrued benefit" is "determined under the plan and ... expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23)(A). During every year of employment, benefits are added to an employee's account, which will be paid at retirement. At some point these benefits cannot be revoked "by virtue of his having fulfilled age and length of service requirements." *Cent. Laborers' Pension Fund,* 541 U.S. at 749. Reduction or elimination of these vested, accrued benefits through plan amendment is impermissible, and gives rise to a claim for violation of ERISA § 204(g). 29 U.S.C. § 1054(g); I.R.C. § 411(d)(6). The anti-cutback rule is a "crucial" aspect of ERISA's protection of pension benefits. *See e.g.*, *Cent. Laborers' Pension Fund,* 541 U.S. at 743-44; *see also Bellas v. CBS, Inc.*, 221 F.3d 517, 522, 525 (3d Cir. 2000), *cert. denied*, 531 U.S. 1104 (2001).

Here, there is no dispute as to whether the Plan was factually amended in a manner affecting Plaintiff's accrued benefits – it was not. Absent an amendment that reduces benefits, there is no § 204(g) claim. *Hein v. F.D.I.C.*, 88 F.3d 210, 216 (3d Cir. 1996). But even when "the actual text of the Plan was [not] amended or modified in any way," an erroneous interpretation will be construed as a *de facto* amendment. *Id.* ("An erroneous interpretation of a plan provision that results in the improper denial of benefits to a plan participant may be construed as an 'amendment' for the purposes of ERISA § 204(g)."); *Battoni v. IBEW Local Union No. 102 Employee Pension Plan*, 594 F.3d 230, 234, 235 n.3 (3d Cir. 2010) ("what constitutes an 'amendment' to a pension plan has been construed broadly to protect pension benefits."). Treasury regulations "implementing the anti-cutback rule make the point explicitly: Section 1.411(d)-4, A-4(a), provides that a pension plan may not deny a protected benefit 'directly or indirectly, through the exercise of discretion ....'" *Battoni v. IBEW Local Union No.*

11

*102 Employee Pension Plan*, 569 F. Supp. 2d 480, 491-92 (D.N.J. 2008) *aff'd*, 594 F.3d 230 (3d Cir. 2010).  The dispute here is whether Defendants' interpretation of the Plan - that employees who continue to work after retirement age are not entitled to an actuarial increase for delaying the start of their pension - functions as a *de facto* amendment.

When reviewing a Plan, "the proper standard of review" of a plan administrator's interpretation of plan language "depends on the language of the instrument." *Conkright v. Frommert*, 559 U.S. 506, 512 (2010) (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111–12 (1989)).  If the plan documents give the trustee "power to construe disputed or doubtful terms, ... the trustee's interpretation will not be disturbed if reasonable." *Firestone*, 489 U.S. at 111.  Thus, where the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, it is subject to "arbitrary and capricious" review. *Doroshow v. Hartford Life & Acc. Ins. Co.,* 574 F.3d 230, 233 (3d Cir. 2009).  Here, Defendants' interpretation will only be reversed if arbitrary or capricious because the Plan provides extensive discretion to the Board of Trustees over eligibility and coverage:

> [I]t being intended that the Board of Trustees shall have the most extensive discretionary authority and deference allowed by law. The Board of Trustees shall have full and exclusive discretion and authority to determine all questions of coverage and eligibility for benefits and the amount of such benefits; to promulgate rules and regulations governing the Plan and to interpret and construe all terms and conditions of the Plan and its rules and regulations and all decisions of the Trustees in this regard shall be final and binding subject to the right of review as set forth in the Plan and applicable federal law.

(Pl.'s Br. in Oppn. to Mot. for Summ. J. Ex. C 27, ECF No. 63-6).  Where the terms of a plan are unambiguous, no interpretation is necessary, and extrinsic evidence is not admissible to establish their meaning. *See Epright v. Envtl. Res. Mgmt., Inc.*, 81

F.3d 335, 339-40 (3d Cir. 1996) (citing *Blau v. Del Monte Corp*., 748 F.2d 1348, 1353 (9th Cir. 1984)). Here, the language of the Plan plainly supports Defendants' interpretation. Employees under age 70 ½ do not receive any actuarial increase in their pensions when they decide to delay retirement and instead work at salary.

The Plan permits an employee to retire and receive a regular pension at "Normal Retirement Age," which may be as low as age 62 depending on the level of credited service. However, for each additional year the employee serves, additional benefits accrue, up to a maximum of 35 years of credited service. After accruing 35 credited years, employees have the option to keep working at salary without accruing any additional benefit, or they may begin drawing their pension, which requires retirement under the terms of the Plan. With one exception discussed below, an employee must retire before taking his pension: "Participant must have separated from Covered Employment after fulfilling the requirements for receipt of a nonforfeitable pension …." In 2005, when Plaintiff reached 35 years of service and was 65 years old, it is undisputed that he could have retired and taken a regular pension. He also had the option to keep working at salary. But he did not have the option to keep working *and* begin drawing a pension.

This rule changes at age 70 ½, and the employee may take his pension while working – receiving both a salary and a pension. Here, if a 70 ½-year-old employee elects, in writing, to defer his pension until actual retirement, and receive only a salary, he is entitled to an actuarial increase in the ultimate annuity proportional to the period of deferment.[5] Unlike a 65-year-old employee, who must choose between pension and salary, a 70 ½-year-old employee is entitled to both, and thus receives an actuarial adjustment for delaying his pension. But before age 70 ½, to

---

[5] This actuarial adjustment is explicitly required by statute for employees over age 70 ½. 26 U.S.C. 401(a)(9)(C)(iii).

13

receive a pension, the employee must retire; to receive a salary, the employee must delay his pension and keep working. Consequently, a 65-year-old employee, as Person was in 2004, receives no extra benefit, no actuarial increase in his pension, for opting to receive a salary but delay his pension. This is reflected in the Plan:

> Distributions of pension benefits, as provided herein, shall be made to Participants, or commence, not later than the earlier of (1) the April 1st following the calendar year in which the Participant retires, or (2) the April 1st following the calendar year in which the Participant attains age 70 ½. A Participant, subject to the distribution rules in the preceding sentence and the next two paragraphs, may elect in writing on a form approved by the Trustees to continue to defer receipt of benefits (subject to an Actuarial Equivalent increase in his benefit in the manner described below) until the date on which he actually retires, even if such date is after the April 1st following the calendar year in which the Participant attains age 70 ½… A Participant who attains age 70 ½, who is still employed in Covered Employment on the April 1 of the calendar year following the calendar year in which he attains age 70 ½, and who elects that payment of his retirement benefit not begin until he actually retires shall have his monthly retirement benefit increased actuarially consistent with Section 2.02 to take into account the period in which he could have been, but is not, receiving any benefits under the Plan.

(Pl.'s Oppn. to Mot. for Summ. J. Ex. C 20, ECF No. 63-6)

Under the terms of the Plan, to benefit from an actuarial increase, the employee must either (1) have retired or (2) be over age 70 ½ - neither of which were true for Person between 2004 and 2010. Specifically, the actuarial increase is only relevant when: (1) an employee has left employment and is not receiving a salary, but chooses to delay his pension;[6] or (2) the employee is over age 70 ½, entitled to simultaneously receive both a salary and a pension, but chooses to delay his pension. Nowhere does the Plan suggest that an employee below age 70 ½ receives an

---

[6] "Upon reaching Normal Retirement Age, an employee upon termination of Covered Employment may elect to defer retirement benefits until a later date. In such event, the Normal Retirement Benefit at such later date shall be the Actuarial Equivalent of a single life annuity commencing at Normal Retirement Age." (Pl.'s Oppn. to Mot. for Summ. J. Ex. C 12, ECF No. 63-6).

actuarial increase while receiving his salary, but not his pension.[7] This is not a case where the Plan has a provision for "Delayed Retirement" that provides for actuarial increases based on years worked after age 65, such as in *Bocchino v. Trustees Of Dist. Council Ironworkers Fund of Northern N.J.*, 336 F. App'x 197, 198-99 (3d Cir. 2009). There, the Court construed the terms of the plan to provide for an actuarial increase of 1% for every month a participant delayed retirement and continued working based on the explicit text of the Plan. *Id.* Here, Plaintiff's Plan contains no such language, and he is entitled to no such increase.

Between 2004 and 2010, Plaintiff opted to work at salary – which he could not do if he had wished to collect his pension. Thus, he was not "deferring" his pension subject to an actuarial increase, because he was not entitled to it while he was still working. To adopt Plaintiff's interpretation of the language of the Plan would render meaningless the specific provisions for deferment for employees over age 70 ½. Such a construction is unwarranted because, when construing governing language, "effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." *United States v. Higgins*, 128 F.3d 138, 142 (3d Cir.1997). Defendants did not misinterpret the Plan, and therefore, there was no *de facto* amendment under the anti-cutback rule. The anti-cutback rule of "ERISA § 204(g) can protect an entitlement to benefits, but it cannot create an entitlement to benefits when no entitlement exists under the terms of the Plan." *Hein v. F.D.I.C.*, 88 F.3d 210, 217 (3d Cir. 1996). Because the language of the Plan leaves no material issue of fact as to whether Plaintiff was entitled to an actuarial increase in his pension annuity for delaying

---

[7] In fact, Section 4.23 of the Plan states that an employee's pension benefits are suspended during the time he continues working past normal retirement age – thus, no actuarial increase is applied. *See* note 4.

15

retirement, Defendants are entitled to judgment as a matter of law.[8]

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment. An appropriate Order follows.

**/s/ Faith S. Hochberg**
**Hon. Faith S. Hochberg, U.S.D.J.**

---

[8] Plaintiff points to his expert report by Charles Stipelman, finding that "there is a possible violation of the anti cutback rules of ERISA," as establishing a genuine dispute of material fact. (Pl.'s Oppn. to Mot. for Summ. J. Ex. E, ECF No. 63-8). But, as Defendants note, the proffered expert admits that that he was not provided with the language of the Plan when coming to his conclusion, and that the documents he was provided did "not make reference to actuarial increases." Given the Court's interpretation of the Plan language, Plaintiff was not entitled to an actuarial increase and Defendants are entitled to judgment as a matter of law.